UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY PACHECO, *et al.*,

      Plaintiffs,

                            Case No. 22-11927

   v.

                            Hon. George Caram Steeh

FORD MOTOR CO.,

      Defendant.

_____/

OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS (ECF NO. 16)

    This matter comes before the court on Defendant Ford Motor

Company's motion to dismiss Plaintiff's amended complaint. For the

reasons explained below, Defendant's motion is granted.

BACKGROUND FACTS

    This putative class action involves the following vehicles

manufactured by Ford Motor Company: Model Year 2020-22 Ford Hybrid

Escapes, 2022 Ford Hybrid Mavericks, and 2021-22 Lincoln Hybrid

Corsairs. The named Plaintiffs are fourteen individuals residing in

California, Illinois, Nevada, New York, Ohio, Oregon, Pennsylvania,

Tennessee, Texas, Virginia, and Washington. Plaintiffs allege that the

engines in affected vehicles "can leak and cause significant quantities of

- 1 -

engine oil and/or fuel vapors to accumulate near ignition sources, resulting in under hood smoke and fires." ECF No. 14 at ¶ 3. Plaintiffs refer to this defect as the "Spontaneous Fire Risk." *Id.* None of the Plaintiffs allege that they experienced leaking engines or an engine fire.

As of June 2022, Ford identified 23 reports of under hood fire or smoke in the affected vehicles. To address this problem, on July 7, 2022, Ford voluntarily initiated a recall supervised by the National Highway Traffic Safety Administration. The recall affects approximately 100,000 vehicles. The NHTSA Safety Recall Report describes the defect as follows: "In the event of an engine failure, significant quantities of engine oil and/or fuel vapor may be released into the under hood environment and may migrate to and/or accumulate near ignition sources resulting in potential under hood fire, localized melting of components, or smoke." ECF No. 14-2. The report describes the cause as follows:

> Isolated engine manufacturing issues have resulted in 2.5L HEV/PHEV engine failures involving engine block or oil pan breach. The fluid dynamics induced by the Under Engine Shield and Active Grille Shutter system could increase the likelihood of engine oil and/or fuel vapor expelled during an engine block or oil pan breach accumulating near sources of ignition, primarily expected to be the exhaust system.

*Id.*

Ford informed owners to bring their vehicles to a dealer for repairs to be made at no charge. To address the fire risk, Ford instructed dealers to modify the under engine shield by drilling additional holes and to modify the active grille shutter system by removing four blinds. These modifications improve air flow through the engine compartment and would allow fluid and vapors to escape in the event of an engine failure. ECF No. 14-2; ECF No. 14 at ¶¶ 10-11.

Plaintiffs dispute the effectiveness of Ford's remedy. They assert that it creates new problems, such as the environmental hazard of leaking fluids, which "sets the stage for future property damage and possible injury." ECF No. 14 at ¶ 12. Plaintiffs contend that the removal of blinds from the grille shutter system "increases aerodynamic drag on the vehicles, resulting in decreased fuel efficiency." *Id.* Although some of the Plaintiffs have had their vehicles modified in accordance with the recall, they allege that the remedy is inadequate.

Plaintiffs seek class-wide relief, on behalf of a nationwide class as well as state-specific subclasses. They allege that Ford violated the Magnuson-Moss Warranty Act and various consumer protection statutes and they assert state claims of fraud, unjust enrichment, and breach of warranty. Plaintiffs seek damages for "overpayment of their vehicles" and

an "order enjoining Ford's deceptive acts and practices." ECF No. 14 at
PageID 440.

LAW AND ANALYSIS

I.      Standard of Review

Ford seeks dismissal of Plaintiffs' complaint pursuant to Federal Rule
of Civil Procedure 12(b)(6). To survive a motion to dismiss, the plaintiff
must allege facts that, if accepted as true, are sufficient "to raise a right to
relief above the speculative level" and to "state a claim to relief that is
plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555
(2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint
"must contain either direct or inferential allegations respecting all the
material elements to sustain a recovery under some viable legal theory."
*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d
315, 319 (6th Cir. 1999) (internal quotation marks omitted).

"Mere conclusions," however, "are not entitled to the assumption of
truth. While legal conclusions can provide the complaint's framework, they
must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff
must provide "more than labels and conclusions," or "a formulaic recitation
of the elements of a cause of action" to survive a motion to dismiss.
*Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause

- 4 -

of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a motion to dismiss, the court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Additionally, "[c]ourts frequently take judicial notice of federal regulatory agency materials and materials available through federal agency websites pursuant to Federal Rule of Evidence 201(b)(2)." *Sharp v. FCA US LLC*, No. CV 21-12497, __ F. Supp.3d __, 2022 WL 14721245, at *1 (E.D. Mich. Oct. 25, 2022).

## II. Prudential Mootness

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp*., 494 U.S. 472, 477 (1990). Accordingly, federal courts lack the power to adjudicate moot "questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). A "cousin" to Article III mootness is the doctrine of prudential mootness. "In some circumstances, a controversy, not actually moot, is so attenuated that

considerations of prudence and comity for coordinate branches of

government counsel the court to stay its hand, and to withhold relief it has

the power to grant." *Chamber of Commerce of U.S. of America v. U.S.*

*Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980).

> Prudential mootness doctrine often makes its appearance
> in cases where a plaintiff starts off with a vital complaint
> but then a coordinate branch of government steps in to
> promise the relief she seeks. Sometimes the plaintiff will
> seek an injunction against the enforcement of a regulation
> the relevant agency later offers to withdraw on its own.
> Sometimes the plaintiff will seek an order forcing a
> department to take an action that it eventually agrees to
> take voluntarily. However it comes about though, once the
> plaintiff has a remedial promise from a coordinate branch
> in hand, we will generally decline to add the promise of a
> judicial remedy to the heap.

*Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir.

2012) (Gorsuch, J.); *see also Greenbaum v. EPA*, 370 F.3d 527, 534-35

(6th Cir. 2004); *Sharp*, 2022 WL 14721245 at *6 ("Most Circuits, including

the Sixth, have adopted the doctrine of prudential mootness.").

In *Winzler*, the plaintiff alleged that certain Toyota Corollas had

defective engines that made them prone to stall without warning. After the

lawsuit was filed, Toyota announced a recall under the National Traffic and

Motor Vehicle Safety Act, which required Toyota to notify owners of the

defect and make free repairs. 49 U.S.C. §§ 30118(c), 30120. The "process

is overseen by the National Highway Transportation Safety Administration

("NHTSA"), an agency of the Department of Transportation that can issue

stiff fines if the company fails to carry out the recall to its satisfaction."

*Winzler*, 681 F.3d at 1209.

The *Winzler* court concluded that the recall rendered the lawsuit

prudentially moot. Although the case was not brought against the

government, the plaintiff "has in hand a remedial commitment from our

coordinate branches all the same." *Id.*

> By filing documents with NHTSA notifying it of a defect,
> Toyota set into motion the great grinding gears of a
> statutorily mandated and administratively overseen
> national recall process. By virtue of its filing, Toyota is now
> obliged by statute to notify all relevant registered owners of
> the defect. The company has assumed as well the
> statutory duty to "remedy the defect or noncompliance
> without charge when the vehicle or equipment is presented
> for remedy." And Toyota has subjected itself to the
> continuing oversight of (and potential penalties imposed
> by) NHTSA.
>
> Given all this, there remains not enough value left for the
> courts to add in this case to warrant carrying on with the
> business of deciding its merits. Congress and the
> Executive have committed to ensure Ms. Winzler precisely
> the relief she seeks.

*Winzler*, 681 F.3d at 1211 (citations omitted); *see also Hadley v. Chrysler*

*Grp., LLC*, 624 Fed. Appx. 374, 379 (6th Cir. 2015) (claims for injunctive

and declaratory relief moot after statutory recall); *Cheng v. BMW of N. Am.*,

*LLC*, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) (finding case "highly analogous" to *Winzler*); *Flores v. FCA US LLC*, 2020 WL 7024850, at *4 (E.D. Mich. Nov. 30, 2020) ("Plaintiffs in the present matter have sustained no actual injury that can be redressed, as repairs have been made to the class vehicles for free."); *Sharp*, 2022 WL 14721245, at *7-10 (national recall rendered lawsuit prudentially moot).

Similarly, by issuing a recall, Ford has subjected itself to the continuing oversight of NHTSA, which monitors "each safety recall to make sure owners receive safe, free, and effective remedies from manufacturers according to the Safety Act and Federal regulations." https://www.nhtsa.gov/recalls; *see also* 49 U.S.C. § 30120(e) ("If the Secretary decides a manufacturer has not reasonably met the remedy requirements, the Secretary shall order the manufacturer to take specified action to meet those requirements and may take any other action authorized under this chapter."). Ford has offered to repair the vehicles at issue and reimburse owners who have already paid for repairs. Ford's promise to remedy the Spontaneous Fire Risk, backed by the NHTSA, renders Plaintiffs' claims regarding the defect prudentially moot.

Plaintiffs resist this conclusion, alleging that Ford's recall remedy is not *bona fide*. To be sure, a finding of prudential mootness would not be

appropriate if the recall remedy leaves Plaintiffs "without complete relief."
*Winzler*, 681 F.2d at 1211-12. "If the party seeking relief can show that
'there exists some cognizable danger of recurrent violation,' some
cognizable danger that the coordinate branch will fail and she will be left
without a complete remedy, we will continue with the case even in the face
of a simultaneous remedial commitment from another branch." *Id.* (citation
omitted).

Plaintiffs argue that Ford's "fix" is inadequate because the "isolated
manufacturing defect" causing leaks is not addressed; rather the repair
allows more air flow, preventing fluids from coming into contact with hot
engine parts and igniting. Plaintiffs do not allege, however, that the
Spontaneous Fire Risk or any safety risk remains after the recall remedy.
(Plaintiffs also do not request that Ford repair their engines to address
leaking – perhaps because none of them have experienced engine leaks.)
Rather, they contend that the remedy creates a "risk" of leaking fluids on to
roads and driveways. But none of them have experienced such leaks, and
any plaintiff who does experience such a leak and suffers damage is
excluded from Plaintiffs' proposed class. ECF No. 14 at ¶ 158. This alleged
risk has not caused any actual, concrete injury to Plaintiffs. *See*
*Sugasawara v. Ford Motor Co.*, 2019 WL 3945105, at *6 (N.D. Cal. Aug.

- 9 -

21, 2019) ("Plaintiffs' allegation that Ford's proffered remedy is ineffectual is conclusory and speculative.").

Plaintiffs also allege that the remedy, particularly the removal of some of the blinds from the active grille shutter system, diminishes fuel economy. They have not, however, alleged they experienced an actual reduction in fuel economy or articulated how this unspecified reduction in fuel economy is actionable. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1015 (E.D. Mich. 2017) ("In order to plead a viable claim for breach of the implied warranty, the plaintiff must allege that the defect rendered the car 'unfit for its intended purpose by compromising the vehicle's safety, rendering it inoperable, or *drastically reducing* its mileage range.'") (cleaned up); *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974, at *20 (E.D. Mich. Sept. 30, 2022) ("No misrepresentation occurs when a manufacturer merely advertises EPA estimates.").

Plaintiffs have not shown a cognizable danger that the recall remedy supervised by NHTSA will fail, but only that they disagree with the approach taken by Ford to fix the problem. This argument does not counsel against a finding of prudential mootness. As the *Winzler* court explained,

> In the context of a recall, reasonable minds might well disagree about the ideal method of notice, the optimal and most realistic timeline for repair, whether repair or replacement is required, where the repairs should occur,

and so on, but still wind up all the same with equally
effective results. . . .

To hold otherwise – to allow a case to proceed simply
because there happen to be differences between the
remedial process a coordinate branch has selected and
those we might choose – would not only require us to
ignore the reality that there's often no one single right way
to go about providing equitable relief to an injured party
. . . . [Plaintiff also] asks us to assume that while NHTSA is
invested with considerable authority to police Toyota's
recall effort, it is likely to abdicate that duty.

*Id.* at 1214.

Plaintiffs also argue that the recall should not preclude their claims for

monetary damages, distinguishing *Winzler* and similar cases as involving

solely requests for declaratory and injunctive relief. Plaintiffs' damages

claim is based upon an overpayment theory; specifically that they overpaid

for their vehicles at the point of purchase, because the undisclosed defect

diminished the value of the vehicles. *See* ECF No. 14 at ¶¶ 183, 196, 221.

However, the recall, which remedies the Spontaneous Fire Risk defect,

moots Plaintiffs' overpayment claim because it "remove[s] the defect upon

which the plaintiffs' diminished-value injury claim is based." *Hadley*, 624

Fed. Appx. at 378; *Sharp*, 2022 WL 14721245 at *7-8; *see also Sater v.*

*Chrysler Grp. LLC,* 2016 WL 7377126, at *7 (C.D. Cal. Oct. 25, 2016) ("As

Defendant has repaired Johnson's truck, Johnson is already in essentially

the same position he would have been in had Defendant sold him a non-

- 11 -

defective truck. Permitting Johnson to retain benefit-of-the-bargain damages for the difference in value between a non-defective truck and the defective truck, even though Defendant has repaired his truck, would afford him precisely the type of double-recovery windfall Texas courts have held is impermissible."). Plaintiffs do not plausibly allege that their vehicles will remain defective or otherwise diminished in value after the recall remedy is accomplished.

Ford has undertaken the recall process and has offered to remedy the Spontaneous Fire Risk without charge. Plaintiffs have not alleged a cognizable danger that this recall process, supervised by NHTSA, will fail and that they will be left without a complete remedy. They also have not alleged that a cognizable damages claim exists after the recall. Under the circumstances, there is no effective relief the court can provide and it is appropriate for the court to exercise its discretion to dismiss this action on prudential mootness grounds.

<u>ORDER</u>

IT IS HEREBY ORDERED that Defendant's motion to dismiss (ECF No. 16) is GRANTED.

Dated: March 22, 2023             s/George Caram Steeh
                                  HON. GEORGE CARAM STEEH
                                  UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 22, 2023, by electronic and/or ordinary mail.

s/Michael Lang
Deputy Clerk