UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY PACHECO, et al.,

Plaintiffs,

v.

FORD MOTOR COMPANY,

Defendant.
_______________________________/

Case No. 2:22-cv-11927

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [51]**

The present dispute involves an auto class action against Ford Motor Company and is related to defects in certain Ford and Lincoln vehicles. Ford moved to dismiss in February 2025, but the case has long been stayed pending arbitration. Arbitration concluded, and the motion is now ripe for decision. For the following reasons, the Court will grant in part and deny in part the motion to dismiss and order the parties to submit a joint discovery plan.

## BACKGROUND

I. Factual History

Some models of hybrid Ford Escapes, Ford Mavericks, and Lincoln Corsairs had defective 2.5L hybrid electric vehicle (HEV) or plug-in hybrid electric vehicle (PHEV) engines. ECF No. 45, PageID.1750. Worn crankshaft bearings, which link the crankshaft to pistons via connecting rods, could cause a "block breach," (a blown

engine) that results in the pooling of oil and fumes and can lead to an engine fire. *Id.* at 1750–1751, 1823.

Following some reports of under-hood smoke and fire, Ford issued National Highway Traffic and Safety (NHTSA) Recall 22V-484 in July 2022. *Id.* at PageID.1755. The July 2022 recall applied to certain 2020–22 Escapes, 2022 Mavericks, and 2021–22 Corsairs. *Id.* To address the risk of engine fires, Ford drilled holes in the Under Engine Shield and removed some of the blinds in the Active Grille Shudder system. *Id.* The additional space supposedly redirected and/or purged fluids and vapors from the engine compartment and reduced temperatures under the hood. *Id.* at PageID.1835. But the Active Grille Shudder system improved fuel economy, so Plaintiffs alleged that removing some of the blinds in it made their vehicles less fuel efficient. *Id.* at PageID.1769.

Then, in June 2023, Ford issued another recall, NHTSA Recall 23V-380, that expanded the vehicles included in the recall population and addressed a complication with the initial recall. *Id.* at PageID.1756. The June 2023 recall included 2020–23 Escapes, 2022–23 Mavericks, and 2021–23 Corsairs. *Id.* In the updated recall, Ford advised customers to park and shut off their vehicles as quickly as possible after hearing metal-on-metal engine noises, experiencing torque reduction, or seeing smoke from the engine. *Id.*

For the expanded recall population, Ford provided either a one-time prophylactic replacement for certain vehicles or detection and free engine replacement if it was needed for others. *Id.* at 1757, 1825. Ford replaced the engine

long block in all of the 2023 Escapes and Corsairs without waiting for engine difficulties to occur. *Id.* at PageID.1826; ECF No. 45-8, PageID.1990. And for all other vehicles, Ford updated the Powertrain Control Module (PCM), which included a bearing failure diagnostics enhancement. If the bearing was failing, Ford would replace the engine long block. If software updates and replacements were needed, Ford provided them to vehicle owners free of charge. ECF No. 45-9, PageID.1995–1996.

Finally, in June 2024, Ford launched Customer Satisfaction Program 23N06. ECF No. 45, PageID.1758. Under it, owners of covered vehicles would receive a free replacement of the engine long block in the event of a failing connecting rod bearing for up to 100,000 miles or 10 years after the warranty start date. ECF No. 45-9, PageID.1995.

Plaintiffs are current or former owners of Ford vehicles covered by the recall. *See generally* ECF No. 45, PageID.1762–1796. There are currently eleven plaintiffs in the case. Each claimed to have purchased a vehicle affected by the defect Ford identified in the recall process described above. And each claimed that his or her vehicle suffered from a spontaneous stall/fire risk and could experience a block breach that could result in under-hood smoke and engine fires. *See id.* The eleven plaintiffs generally fall into three categories related to their experiences with their vehicles.

*A. Plaintiffs with "Fire Risk Vehicles" but No Alleged Engine Issues*

The first and largest group of plaintiffs alleged that their cars are "Fire Risk Vehicle[s] that suffer[] from the Spontaneous Stall/Fire Risk." ECF No. 45,

PageID.1768 (Alvarado), PageID.1770 (Murray), PageID.1776 (Pacheco), PageID.1778 (Petty), PageID.1780 (Hilburg), PageID.1784 (Spackman), PageID.1786 (Armani), PageID.1788 (Dunning), PageID.1794 (Simmons). They each received repairs according to Ford's 2022 recall, but they believe the remedy was deficient. They also alleged that the remedy decreased the durability and fuel efficiency of their cars. And each of the Plaintiffs either would not have purchased their cars or would have paid less had they known about the defects and Ford's defective remedy. But none experienced engine problems. *See generally id.* at PageID.1768–1796. That group of Plaintiffs includes the following, grouped by state:

*California*. Plaintiff Jennifer Alvarado purchased a 2022 Ford Maverick in December 2021. *Id.* at PageID.1768. At the time of filing, she had not disposed of her vehicle. *See id.* Like Alvarado, Plaintiff Brice Murray purchased a 2022 Ford Maverick in December 2021. *Id.* at PageID.1770. Murray disposed of his Maverick in 2024. *Id.* at PageID.1771. The final California Plaintiff in the risk-only group is Anthony Pacheco. *Id.* at PageID.1776. He purchased a Ford Maverick in 2022 that he got rid of in 2023. *Id.* at PageID.1776, 1778.

*Nevada*. Plaintiff Sawyer Spackman, a Nevada resident, purchased a 2020 Ford Escape in January 2021. *Id.* at PageID.1784. Spackman disposed of his vehicle in 2023. *Id.* at PageID.1786.

*New York*. Plaintiff John Armani purchased his 2022 Ford Maverick in April 2022. *Id.* at PageID.1786. Armani disposed of his vehicle in 2024. *Id.* at PageID.1788.

*Oregon*. Plaintiff Christopher Dunning bought a 2022 Ford Maverick in June 2022 from Carvana, an online company that delivered Plaintiff's vehicle directly to him in Oregon. *Id.* at PageID.1788.

*Illinois*. Plaintiff David Petty bought a 2022 Ford Maverick while living in Illinois. *Id.* at PageID.1778. At the time of filing, Petty had not disposed of his vehicle.

*Missouri*. Plaintiff Harry Hilburg is a Missouri resident who purchased a 2022 Ford Escape in May 2022. *Id.* at PageID.1780. His vehicle was repaired according to the July 2022 recall repair, but in June 2023, Hilburg received a second recall notice for the same issue. *Id.* at PageID.1781. His vehicle was repaired accordingly. *Id.* At the time of filing, Hilburg had not disposed of his vehicle. *See id.* at PageID.1780.

*Wisconsin*. Plaintiff William Simmons bought a 2022 Lincoln Corsair in September 2022. *Id.* at PageID.1794. Simmons's allegations are somewhat conflicting. He first alleged that when he contacted his dealer after receiving a recall notice, he "was repeatedly told" that the recall repair was no longer available and that a new repair was in progress but not yet available. *Id.* at PageID.1795. But then, in the next paragraph of the complaint, Simmons alleged that he did in fact receive the remedy from the July 2022 recall—holes drilled into the under-engine shield and blinds removed from the car's active grille shutter—but that such a fix was inadequate and resulted in other problems. *Id.* Unlike the other plaintiffs, Simmons alleged that he also received a letter that Ford would extend his warranty for 10 years/100,000 miles to replace his engine long block. *Id.* But he does not believe the

extended warranty is an adequate remedy because "it does not resolve the underlying issue and will affect his vehicle's resale value." *Id.*

*B. Plaintiff with Some Engine Issues*

The second category of plaintiffs are those whose vehicles were covered under Ford's recalls and experienced some mechanical issues short of engine fire. At the current state of the case, only one plaintiff falls in this category. Victoria Adams purchased a 2020 Ford Escape in December 2020 from a dealership in Washington. *Id.* at 1792. Like the other plaintiffs, she alleged that her car "is a Fire Risk Vehicle that suffers from the Spontaneous Stall/Fire Risk." *Id.* Adams received the remedy Ford provided in its 2022 recall, but Adams alleged not only that the fix was inadequate, but also that it decreased her car's durability and fuel efficiency. *Id.* at PageID.1793. And like her co-plaintiffs, Adams alleged she would have either not purchased the vehicle or paid less for it had she known of the defect and Ford's solution. *Id.* at PageID.1794. But unlike the other plaintiffs, Adams also alleged that her vehicle once stalled while she was driving it because of engine problems. *Id.* at PageID.1793–1794.

*C. Plaintiff with Engine Fire*

At the current juncture, only one remaining plaintiff experienced an engine fire. Plaintiff Todd Nishon is a California resident who purchased a 2021 Ford Escape in November 2021. *Id.* at PageID.1771. After he received the recall and repair notice from Ford, he attempted to have his vehicle repaired at a dealership, but the dealership allegedly declined to complete the repair because only one employee was

trained to complete the recall repairs and could only do so on certain days. *Id.* at PageID.1772–1773. According to Nishon, the dealership declined to schedule a day to complete the recall repairs on Nishon's vehicle. *Id.* at PageID.1773. The following month, the engine compartment in Nishon's Escape "exploded into flames." *Id.*

## II. Procedural History

The case has a lengthy procedural history. Plaintiffs first sued in 2022 and brought several nationwide and individual claims. First, all plaintiffs brought a nationwide claim under the federal Magnuson-Moss Warranty Act. ECF No. 45, PageID.1847. Second, all but one plaintiff—Christopher Dunning from Oregon—alleged fraudulent concealment on behalf of the nationwide class or, in the alternative, state-specific subclasses. *Id.* at PageID.1853. Third, all but Dunning again alleged unjust enrichment, again on behalf of the nationwide class or state-specific subclasses. *Id.* at PageID.1857. Plaintiffs also brought twenty-two state-specific claims under the laws of ten states. Generally, the state law claims alleged unfair competition, false advertising, breach of the implied warranty of merchantability, and unjust enrichment. *See generally id.* at PageID.1859–1930.

The case was first assigned to Judge Steeh. He granted Ford's motion to dismiss on prudential mootness grounds because of the NHSTA-supervised recall process. ECF No. 22. Plaintiffs appealed and sought relief from the judgment in the district court after Ford issued the May 2023 recall. ECF No. 24. The Sixth Circuit remanded the case and ordered that it be reopened with leave to amend. ECF Nos. 35, 39. Then, in January 2025, the original and some new Plaintiffs filed the second

amended complaint—the operative complaint in the case. ECF No. 45. At the time the second amended complaint was filed, there were sixteen named plaintiffs.

On February 28, 2025, Ford moved to dismiss the second amended complaint. ECF No. 51. Shortly thereafter, the Sixth Circuit heard *Speerly v. General Motors, LLC*, 143 F.4th 306 (6th Cir. 2025) (en banc). Because an issue in the instant case related to standing was before the Sixth Circuit in *Speerly*, the Court ordered supplemental briefing on whether to stay the case until after the resolution of *Speerly*. ECF No. 57. In the meantime, Ford moved to compel arbitration of six Plaintiffs' claims. ECF No. 58. The Court granted the motion to compel arbitration and stayed the case pending a determination of arbitrability by the arbitrator as to the six plaintiffs. ECF No. 68. Thus, although the parties submitted the supplemental briefing the Court requested, the issue became moot because the Court stayed the case for a different reason.

But before the Court entered its order granting the motion to compel arbitration, the Sixth Circuit decided *Speerly*. The Court cited and applied the case in its order because the Court had to assure its jurisdiction before compelling arbitration. *See* ECF No. 74. But ultimately, the Sixth Circuit did not resolve the Article III standing issue, so it did not control the outcome of the motion to compel. *See Speerly*, 143 F.4th at 314–15.

After the Court stayed the case pending a determination of arbitrability by the arbitrator, the parties voluntarily dismissed five of the six arbitration plaintiffs. ECF No. 69. That left one plaintiff, Victoria Adams, against whom Ford sought to compel

arbitration. The Court stayed the remaining ten plaintiffs' claims, as Ford did not seek to compel arbitration against them.

On May 5, 2026, the arbitrator determined that Ford may not compel arbitration of Adams's claims. ECF No. 72-1. The Court therefore reopened the case, scheduled a hearing, and permitted the parties to submit supplemental briefing. ECF No. 73. Although the Court had already answered the standing question as to six of the Plaintiffs, Plaintiffs submitted a short supplemental brief. ECF No. 74. Defendant submitted a lengthy brief. ECF No. 75. Plaintiff then moved for leave to respond to Defendant's longer brief, ECF No. 77, and Defendant opposed the motion but also requested leave to reply to that response, ECF No. 78. And of course, Plaintiff replied. ECF No. 79. The Court granted the motion at the hearing and considered all of the parties' filings.

## DISCUSSION

Ford moved to dismiss all of the claims on standing grounds. ECF No. 51, PageID.2439. The defense also moved to dismiss the fraud-based claims, warranty claims, and unjust enrichment claims under Rule 12(b)(6). *Id.* Finally, Ford moved to dismiss the Oregon plaintiff and strike his allegations from the complaint because he did not assert any Oregon law claims. *Id.* at PageID.2450.

### I. Standing

Article III limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const., art. III, § 2. A case or controversy exists only if the plaintiff has standing—that is, only if the plaintiff suffered an "injury in fact,"

"trace[able]" to the defendant's actions, and "redress[able]" by a favorable decision from the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

A challenge to standing under Rule 12(b)(1) for lack of subject-matter jurisdiction "must be considered prior to other challenges since proper jurisdiction is a prerequisite to determining the validity of a claim." *Bowles v. Sabree*, No. 20-12838, 2022 WL 141666, at *3 (E.D. Mich. Jan. 14, 2022). Plaintiff bears the burden of proving that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). And if the Court lacks subject matter jurisdiction, it must dismiss the case without prejudice. *Taylor v. Owens*, 990 F.3d 493, 496 (6th Cir. 2021).

On a motion to dismiss, the Court is generally confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). But the Court may consider exhibits attached to the complaint, public records, items in the record, and defendant's exhibits attached to a motion "so long as they are referred to in the complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Ford argued that all plaintiffs lack standing. ECF No. 51, PageID.2416. The Court previously addressed its jurisdiction against Ford's attack on standing in its order compelling arbitration. ECF No. 68, PageID.2943. But, here, that holding only applies to Plaintiff Victoria Adams because she is the only remaining plaintiff whose standing was discussed in the Court's prior opinion. *Compare* ECF No. 68, PageID.2940, *with* ECF No. 69 (stipulated order voluntarily dismissing all

arbitration plaintiffs except Adams). And because the Court's prior order noted that its standing analysis was "not set in stone," the Court entertained further argument on standing in supplemental briefing and at a hearing. ECF No. 68, PageID.2950.

After the benefit of supplemental briefing and oral argument, the Court concludes that nine of the eleven plaintiffs—those who did not allege that the defect identified in Ford's recall manifested in their vehicles—do not have standing. But the two plaintiffs who alleged more than just ownership of a vehicle covered by the recall—Plaintiff Adams whose engine stalled and Plaintiff Todd Nishon whose engine caught fire—alleged a concrete injury traceable to Ford's conduct. Moreover, the Court's prior holding—that Plaintiff Adams has standing to sue—remains unchanged.

*A. Universal Defect Alleged*

In its order compelling arbitration, the Court found that the arbitration plaintiffs plausibly alleged a universal defect because they all alleged that their cars had the defect, whether the defects had manifested or not. *Id.* at PageID.2947. And the Court found that the allegations that Plaintiffs' cars were defective were plausible at least in part because Ford applied its recall protocols to all the class vehicles. *Id.* But two recall-related class action cases decided after the Court's order cast those conclusions into doubt.

In an unpublished opinion, the Sixth Circuit affirmed a district court's dismissal of a class action on standing. *Ward v. J.M. Smucker Co.*, No. 24-3387, 2025 WL 2613489, at *4 (6th Cir. Sep. 10, 2025). There, Smuckers recalled more than forty

peanut butter product lines after the FDA identified sixteen cases of salmonella infection linked to Smuckers peanut butter. *Id.* at *2. Accordingly, plaintiffs who had purchased recalled peanut butter sued Smuckers and claimed their product was contaminated. *Id.* Looking to caselaw from the Third Circuit, the court held that the facts alleged did not raise a reasonable inference that the contamination was extensive enough "to plausibly affect any given product." *Id.* at *3 (citing *Huertas v. Bayer US LLC*, 120 F.4th 1169 (3d Cir. 2024)). Beginning with the premise that "[a] product recall, by itself, does not suffice to raise a plausible inference of contamination," the court reached this conclusion because the facts alleged in the complaint contained neither facts regarding the specific products the plaintiffs purchased, other than the fact that they came from recalled product lines, nor allegations suggesting widespread or extensive contamination. *Id.*

Relying on *Smuckers*, Judge Berg recently granted a motion to dismiss a different class action complaint against Ford Motor Company. *See Barkus v. Ford Motor Co.*, No. 24-cv-13310, 2026 WL 800194 (E.D. Mich. Mar. 23, 2026). There, three plaintiffs sued Ford on behalf of themselves and other class members and alleged that their vehicles had intake valves manufactured from an alloy that renders the valves "structurally[ ]compromised." *Id.* at *1. The valves, the plaintiffs alleged, "cannot withstand the pressures placed upon them and risk fracturing," and that such fracturing can cause "catastrophic engine failure." *Id.* The plaintiffs alleged that they paid more for their vehicles with "undisclosed and significant safety defect[s]" than they would have paid had they known of the defective valves. *Id.* at *3. Ford

instituted a recall for certain vehicles that included an inspection, replacement of certain vehicles, and extended warranty coverage. *Id.* at *5. At that time, NHTSA estimated that 90,736 vehicles were "potentially involved" and that 1% of them actually possessed the defect. *Id.*

Judge Berg concluded that the plaintiffs did not have standing because they lacked an injury. *Id.* at *14. His reasoning is highly persuasive. On plausibility, Judge Berg rejected plaintiffs' arguments that the recall process and the complaints that led to it made it possible that one or more of them purchased defective vehicles because "to allege standing . . . Plaintiffs must offer allegations suggesting the manufacturing defect was 'sufficiently extensive' or 'widespread' to plausibly affect Plaintiffs' or the class vehicles." *Id.* at *12 (citing *Smucker*, 2025 WL 2613489, at *3). And looking to the NHTSA public record, at the highest rate, "only 1% of the vehicles (1 in 100) were estimated to have the defect." *Id.* at *13. Thus, Judge Berg concluded that a 1% defect rate did "not nudge the possibility of defect in *any* given product to a plausibility." *Id.*

1. Plaintiffs with No Alleged Engine Issues

As to the first group of plaintiffs identified above, their claims are remarkably similar to the *Barkus* plaintiffs. The claims are largely based on Ford's recall alone since none of them alleged that their vehicles experienced any engine difficulties. *See supra* Section I.A. And according to the NHTSA safety recall report attached to the complaint, the number of potentially involved vehicles is reported as 125,322, and the estimated percentage of vehicles with the defect is reported as 1%. ECF No. 45-30,

PageID.2291. Plaintiffs insist, and the court initially agreed, ECF No. 68, PageID.2947, that they "plausibly alleged that all of their vehicles contain a defect," ECF No. 77-1, PageID.3052, but it is now clear that they did not. *Smucker* expressly foreclosed the Court's prior reasoning, that "[w]ithout faulting Ford for pursuing an ameliorative recall, . . . the possibility that Plaintiffs' care were defective was sufficiently plausible for Ford to pursue universal actions," ECF No. 68, PageID.2947, when it held that "[a] product recall, by itself, does not suffice to raise a plausible inference of contamination." *Smucker*, 2025 WL 2613489, at *3. And like the plaintiffs in *Barkus*, the group of plaintiffs here without engine issues did not allege any facts that make it more than merely possible that their vehicles are defective. *See Barkus*, 2026 WL 800194, at *13.

Plaintiffs' attempts to distinguish *Smucker* and *Barkus* are unavailing. First, Plaintiffs claimed that "[u]nlike *Barkus*," their "vehicles were identified by Ford as affected vehicles and subsequently recalled." ECF No. 77-1, PageID.3053. True, the *Barkus* plaintiffs "admit[ted] that they were not part of the recall and that they have not experienced the defect themselves." *Barkus*, 2026 WL 800194, at *8. But still, the *Barkus* plaintiffs relied on the existence of a recall and argued that it was underinclusive because their vehicles should have been included. *Id.* And whether or not a recall includes the plaintiffs' vehicles, the inquiry is whether the "allegations suggest[] the manufacturing defect was 'sufficiently extensive' or 'widespread' to plausibly affect" the vehicles. *Id.* at *12 (quoting *Smucker*, 2025 WL 2613489, at *3).

Regarding *Smucker*, Plaintiffs merely argue that, unlike the plaintiffs in that case, they "plausibly alleged that all of their vehicles contain a defect." ECF No. 77-1, PageID.3052. Not so. In *Smucker*, the plaintiffs each alleged that they "purchased Jif peanut butter products that were contaminated with *Salmonella*." *Smucker*, 2025 WL 2613489, at *2. But the Sixth Circuit "look[ed] further at the underlying facts alleged." *Id.* Those facts—that they bought recalled peanut butter—were not enough. *Id.* at *2–3. As in *Smucker*, the Court must look behind the bare allegation that Plaintiffs' cars were defective and at the underlying facts. But the complaint is devoid of facts that make it plausible the plaintiffs' cars were defective.

All told, *Smucker* and *Barkus*—decided after the Court's order preliminarily finding standing for certain plaintiffs—lead the Court to conclude that its initial conclusion should be abandoned for the plaintiffs who alleged mere ownership of a car covered by a recall. Those plaintiffs did not plausibly allege a universal defect because nothing in their complaint makes it plausible that their vehicles are among the 1% of vehicles estimated to be defective.

Plaintiffs' overpayment theory fails for the same reason—because they did not allege that the defect manifested. It is true that the Sixth Circuit avoided the question in *Speerly*, *see* 143 F.4th at 314, but Judge Nalbandian's persuasive concurrence supports the conclusion the Court arrives at here. He explained that without any allegations of defectiveness as to a plaintiff's own vehicle, the plaintiff "necessarily receive[d] the benefit of his bargain and has not overpaid." *Id.* at 353–55 (citation modified). And post-*Speerly*, *Smucker*'s plausibility analysis applies with equal force

to the overpayment theory. Because Plaintiffs did not plausibly allege that their vehicles were at risk of suffering the defect that precipitated the recall, their allegations that they overpaid for "defective" cars is likewise implausible. *See Smucker*, 2025 WL 2613489, at *2 (acknowledging the overpayment theory but concluding that it relied on the implausible factual assertion that the plaintiffs purchased contaminated products); *see also Barkus*, 2026 WL 800194, at *7 ("But to establish standing under an overpayment theory, Plaintiffs 'must allege facts sufficient to raise a plausible inference of' a defective product." (quoting *Smucker*, 2025 WL 2613489, at *2)).

Accordingly, Plaintiffs Pacheco, Murray, Spackman, Armani, Alvarado, Dunning, Petty, Hilburg, Simmons, and their attendant claims are dismissed without prejudice. *See Am. Assoc. of Nurse Anesthesiology v. Kennedy*, 183 F.4th 427, 433 n.2 (6th Cir. 2026) ("[D]ismissal for lack of standing is presumptively without prejudice." (citing Fed. R. Civ. P. 41(b))).

2. Plaintiffs with Alleged Engine Issues

The same cannot be said, however, for Plaintiffs Todd Nishon and Victoria Adams. Their allegations regarding their engine issues "nudge" their injuries "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

First, Plaintiff Todd Nishon alleged that the engine compartment in his 2021 Ford Escape "exploded into flames." ECF No. 45, PageID.1773. And the description of the safety risk from the defect in the NHTSA safety recall report is that the

accumulation of oil and/or vapor "may ignite resulting in an under hood fire." ECF No. 45-30. Ford argued that the allegations were not sufficient because Nishon "invites the Court to infer that the recall condition caused the fire because the recall exists" and that, under *Smucker* and *Backus*, "[t]he existence of a recall does not, by itself, raise a plausible inference of defect in any particular vehicle." ECF No. 75, PageID.3016–3017. But the argument is inapposite. Plaintiff Nishon did not merely rely on the existence of a recall to support his claim—his engine literally burst into flames just as Ford warned might happen to his 2021 Ford Escape when it recalled the vehicle. Although Plaintiff Adams's allegations are not as squarely connected to the description of the issue in the NHTSA Recall documents, taking her allegations of engine failure as true, a reasonable inference makes it plausible that her recalled car experienced engine issues because it suffered the defect. *See Thomas v. Montgomery*, 140 F.4th 335, 339 (6th Cir. 2025) ("[At the motion to dismiss stage, a district court] construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff.").

B. *Nationwide Standing*

Plaintiffs brought three "nationwide" claims, all based on state law. The first claim is a Magnuson-Moss Warranty Act (MMWA) claim. ECF No. 45, PageID.1847. Although the MMWA is a federal statute, MMWA claims are based on state law claims and thus "stand or fall" with them. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1017 (E.D. Mich. 2017) (Lawson, J.). The second

and third nationwide claims are state law claims for fraudulent inducement and unjust enrichment. ECF No. 45, PageID.1853, 1857. Although the Court finds that Plaintiffs Nishon and Adams have standing to sue, for them to bring state law claims on behalf of a nationwide class, they "must demonstrate standing for each claim [they] seek[] to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). And because Plaintiffs lack standing under the laws of states where they were not injured, they cannot proceed on behalf of a nationwide class. *Cf. Norman v. FCA US, LLC*, 696 F. Supp. 3d 359, 375 (E.D. Mich. 2023) (Berg, J.) (explaining that "[b]ecause Plaintiffs cannot bring MMWA claims under the laws of states in which they have not been injured, they cannot proceed on behalf of a 'Nationwide Class'"). Accordingly, Plaintiffs Nishon and Adams lack standing to pursue their MMWA, fraudulent concealment, and unjust enrichment claims on behalf of a "Nationwide Class."

II. Rule 12(b)(6)

The Court must grant a motion to dismiss under Rule 12(b)(6) if the complaint fails to allege facts that exceed a speculative level of plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing *Bell Atl. Cop. v. Twombly*, 550 U.S. 544, 555 (2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The Court must view the complaint in the most favorable light to the Plaintiff, presume all well-pleaded factual assertions are true, and draw reasonable inferences in the nonmoving party's favor. *Bassett*, 528 F.3d at

430. And the Court need not credit a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678.

Because the Court concludes that nine of the eleven remaining plaintiffs lack standing, the Court need only address Ford's arguments under Rule 12(b)(6) as to the two plaintiffs who remain: Nishon and Adams. Accordingly the remaining claims include violation of the Magnuson-Moss Warranty Act (Count I), fraudulent concealment (Count II), unjust enrichment (Count III), violation of the California Consumer Legal Remedies Act (Count VI), violation of the California Unfair Competition Law (Count VII), violation of the California False Advertising Law, (Count VIII), violation of the California Song-Beverly Consumer Warranty Act (Count IX), violation of the Washington Consumer Protection Act (Count XXII), and breach of the implied warranty of merchantability under Washington law (Count XXIII).

*A. Fraud-Based Claims*

Ford argued that Plaintiffs' various fraud-based claims did not meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). ECF No. 51, PageID.2450. Rule 9(b) provides that "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud." The fraud-based claims encompass most of the remaining claims, including fraudulent concealment (Count II), violation of the California Consumer Legal Remedies Act[1] (Count VI), violation of

[1] *See Garcia v. Sony Comput. Ent. Am., LLC*, 859 F. Supp. 2d 1056, 1061 (N.D. Cal. 2012) "Rule 9(b) applies to claims under California's [Unfair Competition Law] and [Consumer Legal Remedies Act] that 'allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis' for liability." (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)).

the California Unfair Competition Law[2] (Count VII), violation of the California False Advertising Law[3] (Count VIII), and violation of the Washington Consumer Protection Act[4] (Count XXII).

Ford first argued that, to the extent the fraud-based claims are based on misrepresentations, they fail because the statements alleged are subjective characterizations of value, not factual representations. ECF No. 51, PageID.2451. But Plaintiffs clarified that all of their fraud-based claims are based on Ford's "omissions and concealment, not affirmative misrepresentations." ECF No. 55, PageID.2547.

Fraud claims based on omissions or concealment require allegations of "specific facts showing the manufacturer's knowledge of the defect that it allegedly fraudulently concealed." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 886 (6th Cir. 2021). On that point, Plaintiffs alleged Ford's presale knowledge of the defect from its pre-launch testing, consumer complaints and Ford's subsequent investigation, and implementation of the March 2022 recall.

Pre-launch testing is really the only viable source of pre-sale knowledge that Plaintiffs could plausibly allege because the reports, Ford's investigation of those

[2] *Id.*
[3] *MGA Ent., Inc. v. Dynacraft BSC, Inc.*, No. 2:17-cv-08222, 2018 WL 2448123, at *3 (C.D. Cal. May 30, 2018) (applying the heightened pleading standard of Rule 9(b) to a California false advertising claim because the allegations were grounded in fraud).
[4] "Because Plaintiff's Washington Consumer Protection Act ("CPA") claim sounds in fraud, it too must meet the Rule 9(b) pleading standard." *Nauman v. Gen. Motors LLC*, No. 21-5150, 2021 WL 4502666, at *5 (W.D. Wash. Oct. 1, 2021).

reports, and the implementation of the recall allegedly occurred in 2022 or later.[5] But Plaintiff Nishon purchased his vehicle in 2021, and Plaintiff Adams purchased hers in 2020. ECF No. 45, PageID.1771, 1792. Thus, Ford could not have omitted or concealed information it allegedly learned *after* Plaintiffs purchased their vehicles.

And, to survive a motion to dismiss, results of pre-launch testing must include "accompanying verification that the tests occurred and revealed a safety defect." *Smith*, 988 F.3d at 885. But here, Plaintiffs alleged merely that, in general, Ford claims to put its vehicles through "rigorous testing," and that, "[o]n information and belief," Plaintiffs' vehicles were, too.[6] ECF No. 45, PageID.1831–1833. Based on the testing Plaintiffs believe the vehicles underwent, they alleged that Ford discovered the defect before selling the vehicles to them. Plaintiffs' allegations are devoid of any information that makes it plausible that the testing revealed a safety defect.

As a last-ditch effort, Plaintiffs argued that the Court should construe their allegations "as a whole" instead of parsing each source of presale information to determine whether their fraud-based claims should survive. ECF No. 55, PageID.2549 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011)). But the requirement that the Court must view the complaint "as a whole" does not

[5] The only exception is that although "Ford did not disclose the dates of the 23 fires," Plaintiffs alleged that "on information and belief, Ford learned of at least some of these fires on or before the May 4, 2022 investigation launch." ECF No. 45, PageID.1833. But a plaintiff alleging "the requisite knowledge for fraud cannot escape a motion to dismiss by resting on information and belief without supporting facts." *Smith*, 988 F.3d at 885.

[6] Plaintiffs included specific allegations about the testing of the Maverick, but neither remaining plaintiff bought a Maverick—both bought Ford Escapes. ECF No. 45, PageID.1771, 1792.

save Plaintiffs' claims. None of their allegations, viewed individually or collectively, suffice to substantiate the fraud claims. Accordingly, they must be dismissed.

*B. Implied Warranty Claims*

Next, Ford moved to dismiss the implied warranty claims, including Count IX under the California Song-Beverly Consumer Warranty Act, Count XXIII for breach of the implied warranty of merchantability under Washington law, and Count I under the federal Magnuson-Moss Warranty Act.

Ford argued that both Plaintiff Nishon and Plaintiff Adams cannot state implied warranty claims because, in both California and Washington, implied warranty claims are only viable if "the product was purchased directly from the warrantor." ECF No. 51, PageID.2461.

But Plaintiff Nishon pointed out that, in California, "the privity requirements under California's general implied warranty laws do not apply to claims under the Song-Beverly Act." ECF No. 55, PageID.2553 (quoting *Bettles v. Toyota Motor Corp.*, 2022 WL 1619337, at *5 (C.D. Cal. May 23, 2022)). Plaintiff has the better argument. Nishon's implied warranty allegations are limited to the Song-Beverly Act, and under it, privity is not required. *See* ECF No. 45, PageID.1865–1878; *Soro v. FCA US, LLC*, No. 25-cv-02200, 2026 WL 473050, *8 (S.D. Cal. Feb. 19, 2026) (collecting cases and rejecting an automaker's argument that privity is required under the Song-Beverly Act). Thus, Nishon need not allege privity. And because that is the only basis on which Ford moved to dismiss Nishon's sole Song-Beverly claim (Count IX), it survives.

In Washington, however, privity is required for implied warranty claims. *Baughn v. Honda Motor Co.*, 107 Wash. 2d 127, 151 (1986). Plaintiff Adams pointed out that Washington recognizes a third-party beneficiary exception to privity. ECF No. 55, PageID.2555 (citing *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 981 (E.D. Mich. 2023) (Berg, J.)). Indeed, a plaintiff who can show that he "is the intended third-party beneficiary of a contract between the manufacturer and its direct purchaser, recovery may be available under a third-party beneficiary analysis." *Tex Enters., Inc. v. Brockway Standard, Inc.*, 149 Wash. 2d 204, 213–14 (2003). "Washington courts apply the sum of the interaction test essentially to determine whether the manufacturer was sufficiently involved in the transaction (including post-sale) with the remote purchaser to warrant enforcement of an implied warranty." *In re Pacific Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1042–43 (W.D. Wash. 2025) (citation modified).

In a case much like the present one, a Washington federal court held, under Washington law, that a mere allegation that a plaintiff purchased a vehicle at a dealership is insufficient to invoke the exception. *See Short v. Hyundai Motor Co.*, 444 F. Supp. 3d 1267, 1287 (W.D. Wash. 2020). Here, Plaintiff Adams offered little more than an allegation that she bought a car from a Ford dealer to invoke the third-party beneficiary exception. Accordingly, her pleadings are insufficient to sustain her implied warranty claim.

Since Nishon's Song-Beverly implied warranty claim survives Ford's attack, so too does his MMWA claim. And because Plaintiff Adams's Washington implied

warranty claim fails, so too does her MMWA claim. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d at 1017 (explaining that MMWA claims "stand or fall" with their underlying state implied warranty claims).

*C. Unjust Enrichment Claim*

Finally, Ford argued that Count III for unjust enrichment fails, too, because "an express [warranty] covers the same subject matter [as the unjust enrichment claim]." ECF No. 51, PageID.2463. The express warranty, according to Ford, is a new vehicle limited warranty that Ford is "universally known" to provide. *Id.* Plaintiffs responded that their unjust enrichment claim should not be dismissed because it is pleaded in the alternative. ECF No. 55, PageID.2557.

Of course, unjust enrichment is a state law claim governed by state law—here, California for Nishon and Washington for Adams. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d at 225 (quoting *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999)). In California, although "[u]njust enrichment is not a cause of action," *Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020), courts construe unjust enrichment claims as "quasi-contract claim[s] seeking restitution," *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). California courts "permit plaintiffs to plead unjust enrichment in the alternative at the pleading stage, particularly where the validity, enforceability, or scope of the alleged contract remains in dispute." *Clemmens v. Am. Honda Motor Co., Inc.*, 831 F. Supp. 3d 912, 930 (C.D. Cal. 2026). Similarly, Washington courts generally permit claims of unjust enrichment pleaded in the alternative. *See*

*Deutscher v. Cortes*, No. 85898-0-I, 2024 WL 3027296, at *5 (Ct. App. Wash. Jun. 17, 2024). Here, Plaintiffs did not even plead an express warranty or breach of contract claim, and they did not attach the express warranty Ford mentioned in its motion to dismiss. Limited as the Court is to the complaint and its accompanying documents, *see Bassett*, 528 F.3d at 430, Plaintiffs' unjust enrichment claims are not subject to dismissal simply because Ford argued that an express warranty covers the same subject matter.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to dismiss [51] is **GRANTED IN PART** and **DENIED IN PART** as described above. Accordingly, the remaining claims are Defendant Nishon's claims under the Magnuson-Moss Warranty Act (Count I) and the Song-Beverly Consumer Warranty Act (Count IX) and Defendants Nishon and Adams's claims for unjust enrichment (Count III).

**IT IS FURTHER ORDERED** that Plaintiffs may not bring Counts I and III on behalf of a nationwide class.

**IT IS FURTHER ORDERED** that Plaintiffs Pacheco, Murray, Spackman, Armani, Alvarado, Dunning, Petty, Hilburg, and Simmons are dismissed **WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the parties must **SUBMIT** a joint discovery plan providing a proposed scheduling order and a timeline of when the

parties will be prepared to engage in mediation.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: September 29, 2026